**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

MARICELA NOLASCO VENTURA,

Petitioner,

v.

JOSHUA JOHNSON, et al.,

Respondents.

Case No. EDCV 26-4138-FMO (AS)

**ORDER GRANTING PETITION**

**INTRODUCTION**

On July 23, 2026, Maricela Nolasco Ventura (A# 206-013-345) ("Petitioner"), who is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, proceeding pro se, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") and supporting memorandum seeking release on the ground that her detention since February 20, 2026, without a bond hearing violates her Fifth Amendment due process rights.[1]

[1] Petitioner also filed a motion for a temporary restraining order (Dkt. No. 4), which the Court subsequently denied without prejudice because Petitioner had not shown "imminent, irreparable

(Dkt. Nos. 1, 3). On July 31, 2026, Respondents filed a very brief Answer stating that they "are not presenting an opposition argument at this time." (Dkt. No. 11).

For the reasons stated below, the Petition is GRANTED, Respondents are ORDERED to release Petitioner immediately from immigration detention under the same conditions to which she was subject prior to her current detention, and Respondents are further ENJOINED and RESTRAINED from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

**BACKGROUND**

Petitioner is a citizen and national of Honduras who entered the United States in April 2010 by presenting herself to immigration authorities at the border. (Dkt. No. 3 at 1). She received a credible fear interview at which she was found to have a credible fear of persecution, and she was then released into the United States, where she has resided since. (Id. at 1, 7).

Petitioner has consistently paid her federal taxes since at least 2011, and she has no criminal convictions. (Id. at 1-2). Her

---

harm that cannot be addressed under the standard scheduling order or by expediting the briefing schedule" (Dkt. No. 8 (quoting General Order 26-05 at 5)).

criminal history consists only of (1) a 2014 arrest in Frederick County, Maryland, which was expunged by court order the following year; and (2) a citation for driving while impaired by alcohol in Montgomery County, Maryland, for which she received "Probation Before Judgment" in March 2020 and was not convicted, due to completing all conditions of her probation by September 2021. (Id. at 2, 4, 13-14, 16).

Petitioner has two daughters, ages seventeen and twenty-one, who are lawful permanent residents. (Id. at 1, 5). They depend on her for their care, stability, and daily needs. (Id. at 5).

On February 20, 2026, ICE agents arrested Petitioner on the street without prior notice or any individualized determination of whether her detention was justified. (Id. at 1). She was transferred to Adelanto ICE Processing Center, where she remains, without having received any bond hearing before an immigration judge. (Id. at 2).

**DISCUSSION**

For the reasons explained below, Petitioner is entitled to release from custody, among other relief, because her re-detention without prior notice and a hearing violates due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due

Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). In such circumstances, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Thus, "as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Romero v. Kaiser, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); Jorge M.F. v. Wilkinson, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021)); see also Pinchi,

792 F. Supp. 3d at 1032; Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025).

Petitioner, having been previously released on her own recognizance, therefore has a protected liberty interest in remaining out of custody. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process he is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner's private interest is significant, as she has been living in the United States for over

sixteen years and has two daughters who depend on her for care and support. See Morrissey, 408 U.S. at 482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

As to the second factor, the risk of erroneous deprivation of liberty is high if Petitioner is deprived of any custody redetermination hearing or is provided a hearing only after she has been detained. Particularly as Petitioner was previously released upon being found not to pose a flight risk or danger to the community, an arrest without a prompt hearing or other procedural safeguard poses a significant risk of error, with substantial harm. See also Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, Respondents have offered no justification for detaining Petitioner and have expressly declined to oppose her release. (See Answer at 2).

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being re-detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)); Pinchi, 792 F. Supp. 3d at 1036 (Mathews test weighed in favor of requiring pre-detention bond hearing for noncitizen previously released on bond during pendency of removal proceedings); Pablo Sequen, 800 F. Supp. 3d at 1014 (same). Having been deprived of that right, Petitioner is entitled to release from detention. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to Petitioner, who would continue to be held in detention without due process until the bond hearing takes place.").

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. Nos. 1-2), ORDERS Respondents to release Petitioner Maricela Nolasco Ventura (A# 206-013-345) immediately from immigration detention under the same conditions to which she was subject prior to her current detention, and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. If Petitioner is again placed into detention in this District following proceedings in this case, Respondents shall not transfer or remove Petitioner from this District unless executing a final order of removal issued against Petitioner. Should Respondents take steps to remove Petitioner to a third country, Respondents shall not remove Petitioner to any third country without providing Petitioner written notice and affording Petitioner a meaningful opportunity to seek any available fear-based protections or relief. Respondents are further ordered to file a "notice of compliance" within three days of the date of this Order and entry of Judgment.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 4, 2026

_____________/s/_____________
FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE